UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:19-CV-00063-GNS-HBB

CHRIS TRULOCK                                                                                    PLAINTIFF

v.

HORSE CAVE CITY et al.                                                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment (DN 55). The motion is ripe for adjudication.

### I.   STATEMENT OF FACTS AND CLAIMS

Plaintiff Chris Trulock ("Trulock") initiated this action against Defendants City of Horse Cave, Kentucky,[1] and its mayor, Randall Curry ("Mayor Curry") (jointly, "Defendants"), after Mayor Curry fired Trulock from his position as a police officer employed by the Horse Cave Police Department ("HCPD"). (Compl. ¶¶ 1-12, DN 1; Defs.' Mot. Summ. J. Ex. H, at 2, DN 55-8).

On February 18, 2018, Trulock, along with HCPD Chief Sean Henry ("Henry"), arrested a suspect in his apartment. (Henry Dep. 26:10-25, Oct. 6, 2024, DN 5). Based on what they believed to be the odor and presence of marijuana, Trulock and Henry obtained a search warrant and searched the apartment. (Trulock Dep. 37:25-39:21, Dec. 6, 2024, DN 56). Two Kentucky State Police ("KSP") troopers, Shae Foley and Raymond Chambers, assisted in the search. (Defs.' Mot. Summ. J. Ex. A, at 1, DN 55-1). The KSP troopers believed that they observed Trulock tampering

---

[1] Defendants state that the correct name of the municipal defendant is "the City of Horse Cave," not "Horse Cave City." (Defs.' Mot. Summ. J. 1 n.1). The Court will refer to the municipal defendant as "the City."

1

with evidence during the search. (Defs.' Mot. Summ. J. Ex. A, at 4; Chambers Dep. 82:11-83:3, Sep. 6, 2023, DN 59). They reported their observations and concerns to their KSP supervisor and the Federal Bureau of Investigation ("FBI"). (Foley Dep. 26:10-22, May 22, 2024, DN 58). The FBI searched HCPD, but no criminal charges have been brought against Trulock or Henry. (Ross Dep. 22:6-8, Feb. 8, 2024, DN 62; Nichols Dep. 40:6-24, Nov. 27, 2023, DN 60).

Trulock and Henry invoked their Fifth Amendment right against self-incrimination and did not testify at the preliminary hearing for the suspect they arrested, which led the prosecutor to dismiss the charges against the suspect. (Nichols Dep. 67:18-70:6). The Hart County Attorney and the Commonwealth's Attorney informed Mayor Curry that the prosecution of pending and new cases involving HCPD was put on hold because of "questions regarding a criminal case filed by the Horse Cave Police Department," referencing the alleged evidence tampering. (Defs.' Mot. Summ. J. Ex. B, at 1, DN 55-2; Nichols Dep. 14:1-10). The prosecutors later indicated that they would continue to prosecute cases from three uninvolved HCPD officers. (Defs.' Mot. Summ. J. Ex. C, at 1, DN 55-3; Defs.' Mot. Summ. J. Ex. D, at 1, DN 55-4).

Mayor Curry suspended Trulock, then issued Disciplinary Charges and a Notice of Disciplinary Hearing. (Defs.' Mot. Summ. J. Ex. E, at 1, DN 59-5; Defs.' Mot. Summ. J. Ex. G, at 1, DN 55-7). Mayor Curry charged Trulock with the inability to perform the essential functions of his job as a police officer. (Defs.' Mot. Summ. J. Ex. G, at 2). The factual bases for the charge were: (1) the Hart County Attorney's "questions regarding a criminal case filed by the Horse Cave Police Department" and the prosecutors' decision not to move forward with HCPD cases, complaints, and warrants until the questions were fully resolved; (2) the search warrant that was issued for HCPD, which covered equipment issued to Trulock by HCPD and included a photograph of Trulock; and (3) the letter indicating the prosecutors would prosecute criminal

charges filed by three HCPD officers as long as Trulock had "absolutely no involvement in the case whatsoever," Trulock's inability or unwillingness to testify in support of criminal charges, and the prosecutors' decision to not pursue charges or to dismiss charges because of Trulock's involvement. (Defs.' Mot. Summ. J. Ex. G, at 1).

Without conceding that Trulock was entitled to a hearing by law, a disciplinary hearing was provided by the City, but Trulock failed to appear. (Defs.' Mot. Summ. J. Ex. G, at 1 n.1; Defs.' Mot. Summ. J. Ex. H, at 2, DN 55-8). Following the hearing, Mayor Curry terminated Trulock's employment with HCPD because "the facts as set forth in the disciplinary charges were substantiated and that substantial evidence exists to prove the charges and to support disciplinary action against Mr. Trulock." (Defs.' Mot. Summ. J. Ex. H, at 2). Despite the availability of an appeal under Kentucky law, Trulock did not appeal the mayor's decision to Hart Circuit Court (Kentucky). (Trulock Dep. 73:15-74:7).

Trulock asserts that he never received notice of his suspension, notice of his hearing, or his termination letter. (Trulock Dep. 61:14-67:11, 71:25-72:3, 72:15-24). He filed this action, asserting claims for violations of his property and liberty rights under the due process clause of the Fourteenth Amendment, as well as wrongful termination under Kentucky law. (Compl. ¶¶ 13-24). Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. (Defs.' Mot. Summ. J. 1, DN 55).

## II.     **JURISDICTION**

The Court has jurisdiction over this matter based upon federal question jurisdiction. *See* 28 U.S.C. § 1331. The Court also has supplemental jurisdiction over the pendent state-law claim. *See* 28 U.S.C. § 1367.

### III.  STANDARD OF REVIEW

In ruling on a motion for summary judgment, the Court must determine whether there is any genuine issue of material fact that would preclude entry of judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of stating the basis for the motion and identifying the evidence demonstrating an absence of a genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party satisfies its burden, the nonmoving party must then produce specific evidence proving the existence of a genuine dispute of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

While the Court must view the evidence in the light most favorable for the nonmoving party, the nonmoving party must do more than merely show the existence of some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citation omitted). Rather, the nonmoving party must present facts proving that a genuine factual dispute exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient" to overcome summary judgment. *Anderson*, 477 U.S. at 252.

### IV.  DISCUSSION

Defendants moved for summary judgment on the bases that: (i) Trulock was an at-will employee and KRS 15.520 is inapplicable; (ii) Trulock did not properly appeal his termination, so his claims are waived; (iii) Trulock did not have a protected property or liberty interest, and, if he did, he was provided with a hearing; and (iv) Trulock's official-capacity claim against Mayor

Curry is duplicative; and (v) his individual-capacity claim against Mayor Curry fails because Trulock points to only official acts and the mayor is entitled to qualified immunity.

### A. Kentucky Police Officers' Bill of Rights

Under Kentucky law, a mayor may terminate police officers at will "unless otherwise provided by statute or ordinance." KRS 83A.080(3); *Howard v. City of Indep.*, 199 S.W.3d 741, 745 (Ky. App. 2005). KRS 15.520, also known as the Police Officers' Bill of Rights, "limits a mayor's ability to discharge a police officer at will if grounds set out in the statute apply." *Howard*, 199 S.W.3d at 745 (citing *City of Munfordville v. Sheldon*, 977 S.W.2d 497, 499 (Ky. 1998)). The stated purpose of KRS 15.520 is as follows:

> In order to establish a minimum system of professional conduct for officers of local units of government of this Commonwealth, the following standards are stated as the intention of the General Assembly to deal fairly and establish administrative due process rights in certain disciplinary matters concerning those officers . . . and, at the same time, to provide a means for redress by the citizens of the Commonwealth for wrongs allegedly done to them by officers covered by this section.

KRS 15.520(2).

KRS 15.520 applies to "officers of an employing unit of government that participates in the Kentucky Law Enforcement Foundation Program fund . . . ." KRS 15.520(2). By its own terms, KRS 15.520 is not intended to apply to *every* disciplinary matter. KRS 15.520(2) ("[T]he following standards are stated as the intention of the General Assembly to deal fairly and establish administrative due process rights in *certain* disciplinary matters . . . ." (emphasis added)). For the protections of KRS 15.520 to apply, there must be an allegation of misconduct. A different subsection of KRS 15.520 may apply depending on the person alleging the misconduct.[2] First,

---

[2] Defendants incorrectly assert that "[t]o trigger KRS 15.520, a civilian complaint must prompt the municipality's employment action." (Defs.' Reply Mot. Summ. J. 7, DN 73). KRS 15.520 also explicitly covers accusations by "any individual within the law enforcement agency employing the officer, including supervisors and elected or appointed officials of the officer's employing

5

KRS 15.520(3) applies when there is a "complaint taken from a citizen alleging misconduct."[3]

KRS 15.520(4) applies when "an officer is accused of an act or omission that would constitute a violation of law enforcement procedures[4] by any individual within the law enforcement agency employing the officer, including supervisors and elected or appointed officials of the officer's employing agency . . . ."

The Kentucky Court of Appeals has acknowledged that "[i]t would be absurd" to apply the protections of KRS 15.520 where "there has been a removal under authority to remove at will

---

agency . . . ." KRS 15.520(4)(a); *Schell v. Young*, 640 S.W.3d 24, 41 (Ky. App. 2021) ("[T]he General Assembly subsequently enacted significant changes to the statute to make its scope plain, namely that it applies: (1) to complaints from citizens alleging misconduct by a police officer, KRS 15.520(3); and (2) '[w]hen an officer is accused of an act or omission that would constitute a violation of law enforcement procedures by any individual within the law enforcement agency employing the officer[.]'" (second and third alterations in original) (quoting KRS 15.520(4)(a))).

[3] A "complaint" is defined as "any statement by a citizen, whether written or verbal, that alleges any type of misconduct by an officer, including statements that are submitted or received anonymously . . . ." KRS 15.520(1)(b). A "citizen" is anyone who is not a "member or supervisor within the law enforcement agency that employs an officer" or "an elected or appointed official within the unit of government under which the law enforcement agency that employs the officer is organized . . . ." KRS 15.520(1)(a). The term "misconduct" refers to "any act or omission by an officer that violates criminal law, law enforcement procedures, or the general employment policies of the employing agency . . . ." KRS 15.520(1)(g).

[4] Law enforcement procedures are "only those policies, rules, and customs that":

> 1. Are specific to the conduct of officers in the exercise of law enforcement powers and functions, including, without limitation: use of force, conduct in the course of pursuits, conduct during stops or detentions of citizens, conduct in the course of interacting with, assisting, or questioning of citizens, and investigative conduct;
> 2. Are carried out in the course of peace officer functions;
> 3. Are not general employment policies; and
> 4. May exist in either written form or in the form of unwritten standards, practices, or protocols generally accepted and applied in the law enforcement profession . . . .

KRS 15.520(1)(f). General employment policies, on the other hand, are "the rules, regulations, policies, and procedures commonly applicable to the general workforce or civilian employees that are not unique to law enforcement activities or the exercise of peace officer authority . . . ." KRS 15.520(1)(d).

rather than a removal for some cause, since there would be nothing to inquire into." *McCloud v. Whitt*, 639 S.W.2d 375, 377 (Ky. App. 1982). If there is a complaint, however, a mayor or other local authority may not proceed to terminate a police officer "by simply couching the decision to fire in the guise of a simple act of discretion." *Sheldon*, 977 S.W.2d at 499. "Nothing . . . prohibits a mayor from discharging an officer at his or her discretion, so long as the reason behind the discharge does not trigger the hearing requirement of KRS 15.520 . . . ." *Id.*

As a threshold matter, the City of Horse Cave participates in the Kentucky Law Enforcement Foundation Program fund, so Trulock is a covered officer. (Pl.'s Resp. Defs.' Mot. Summ. J. 9-11, DN 69; Pl.'s Resp. Defs.' Mot. Summ. J. Ex. B, DN 69). Next, the KSP troopers, the Commonwealth's Attorney, and the Hart County Attorney are citizens for the purposes of KRS 15.520 because they are not employed by HCPD, Trulock's employing agency, or the City. Accordingly, KRS 15.520(3) would apply if they made a complaint under the meaning of the statute.

The KSP troopers believed that Trulock tampered with evidence, but they did not talk to Mayor Curry or HCPD about their concerns; instead, they shared their observations with their KSP supervisor, the FBI, and the Hart County Attorney. (Foley Dep. 102:5-104:24). These concerns, however, were relayed to the mayor by the Hart County Attorney. (Curry Dep. Feb. 8, 2024, 39:5-41:21, DN 61). KRS 15.520 does not set out any clear procedural requirements for filing a complaint—the statute is permissive, covering any "written or verbal" statements. KRS 15.520(1)(b). These allegations of misconduct, however, must be "filed" with, "submitted" to, or "taken" or "received" *by someone*—presumably the employing law enforcement agency. KRS 15.520(1)(b), (3), (5)(a). But the statute does not required complaints to be made *directly* to the employing law enforcement agency; the statute, on its face, does not exclude second-hand

7

allegations. Moreover, because the statute permits anonymous complaints and allows agencies to conduct investigations without affidavits, it is evident that extensive citizen involvement is not necessary. KRS 15.520(1)(b), (3)(a). Importantly, KRS 15.520 has "dual purposes," but these purposes do not both have to be accomplished—the statute is not solely focused on "redressing wrongs to citizens," but also providing "administrative due process" to police officers. *Pearce v. Univ. of Louisville by and through its Bd. of Trs.*, 448 S.W.3d 746, 751 (Ky. 2014). Accordingly, the allegations by the KSP troopers relayed by the Hart County Attorney qualify as a "complaint" for the purposes of KRS 15.520.

Defendants point to the lack of independent investigation by Mayor Curry to support their contention that KRS 15.520 is not applicable. (Defs.' Reply Mot. Summ. J. 6; Curry Dep. 51:5-15). The statute, however, does not require the employing agency to investigate complaints. KRS 15.520(5)(a) ("Any complaint . . . shall be investigated . . . in accordance with the provisions of this subsection *if the employing agency determines that an investigation of the complaint or the alleged conduct is warranted*." (emphasis added)); KRS 15.520(6)(a) ("If it is determined through investigation *or other means* that the facts alleged in a citizen complaint or in an accusation of a violation of law enforcement procedures warrant charging the officer . . . ." (emphasis added)). Additionally, an employing agency may choose to designate another law enforcement agency to investigate the complaint. KRS 15.520(5)(a) ("Any complaint . . . shall be investigated by the employing agency or another designated law enforcement agency . . . ."). The Hart County Attorney stated that "it was the consensus to allow some other agency to investigate, rather than Horse Cave investigate itself." (Nichols Dep. 18:2-5). Indeed, the FBI and KSP both investigated HCPD. (Curry Dep. 38:11-24).

Because there were no deficiencies with the complaint or investigation, the crux of the issue is Mayor Curry's reasoning for firing Trulock. If Mayor Curry terminated Trulock because of the prosecutors' decision not to work with Trulock while he was being investigated for misconduct, then Trulock would not be protected by KRS 15.520. Conversely, if Mayor Curry terminated Trulock because of the misconduct itself, then Trulock would be entitled to the protections of KRS 15.520.[5]

Defendants assert that Mayor Curry fired Trulock because he was unable to perform his job, citing the disciplinary charges that Mayor Curry issued. (Defs.' Reply Summ. J. 4; Defs.' Summ. J. Ex. G). Defendants also point to Mayor Curry's deposition where he explains his decision to suspend Trulock in these same terms:

> Q   Instead of suspending Mr. Trulock, would he have still been able to remain employed by the City of Horse Cave and perform, you know, other police activities that didn't involve either the county attorney or the commonwealth attorney?
> A   No.
> Q   Why not?
> A   My department is—is so small, you know, I have to have hands-on, and I have no other position for—that I could put people in that position.
> Q   What do you mean?

---

[5] KRS 15.520 does not apply to an employing agency's action "that is not related to misconduct by a law enforcement officer," but this limitation is more expansive than it may sound. KRS 15.520(10)(e). For KRS 15.520 to apply, Kentucky courts implicitly require a termination decision to be based on an actual allegation of misconduct, not just some circumstances that simply relate to misconduct. For example, the Kentucky Court of Appeals has recognized that "[t]he function of the hearing body in instances of charges against police officers is to make two determinations: first, *whether the officer has violated the rules and regulations of the department* and if so, second, it must exercise its discretion in imposing a penalty." *Murphy v. City of Richmond Gov't ex rel. Richmond City Comm'n*, No. 2011-CA-001710-MR, 2013 WL 1163802, at *3 (Ky. App. Mar. 22, 2013) (emphasis added) (quoting *Stallins v. City of Madisonville*, 707 S.W.2d 349, 351 (Ky. App. 1986)). There must be an allegation of misconduct for the hearing requirement to make sense: "It would be absurd to require a hearing where, as here, there has been a removal under authority to remove at will rather than a removal for some cause, since there would be nothing to inquire into." *McCloud*, 639 S.W.2d at 377. Additionally, the termination of employees who can no longer perform their duties fits neatly into an example the statue provides for when its protections do not apply: "personnel decisions made by the employing agency due to a lack of resources . . . ." KRS 15.520(10)(e).

9

> A In other words, if you're not able to do your regular job, I don't have a position for you.

(Curry Dep. 51:16-52:4). In Trulock's response, he asserts that Mayor Curry terminated him because of the charges made against him, citing Mayor Curry's testimony:

> Q Mayor Curry, yeah, I—I did go back and take a look at your previous deposition, and on Pages 137 and 138 of the deposition that was taken of you on January 27th, 2022, you were asked whether or not Mr. Trulock was—was fired because he didn't show up for the hearing, like his—his termination hearing, or was he fired because of the charges. And you—you—you stated on the record that Mr. Trulock was fired because of the charges. Does that sound right?
> A Correct. Yes.
> Q Okay. And then the question was asked, "And the charges were, again, that he had been involved in a misconduct involving arrest; is that correct?" And you said "Yes."
> A Correct.

(Curry Dep. 126:7-22).

Construing the evidence in the proper light, Mayor Curry's reason for firing Trulock is a question of fact. When deciding a motion for summary judgment, the Court does not engage in "jury functions" like "credibility determinations and weighing the evidence." *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 515 (6th Cir. 2019) (citing *Anderson*, 477 U.S. at 255).[6] Because

---

[6] Courts have found that when parties misspeak in a deposition, but correct themselves, these misstatements do not create a genuine question. *See Alpek Polyester, S.A. de C.V. v. Polymetrix AG*, No. 2021-1706, 2021 WL 5974163, at *5 (Fed. Cir. Dec. 16, 2021) ("In context, it is abundantly clear that Mr. Awasthi simply misheard the question asked of him. . . . But the remainder of his answer demonstrates that he was actually referring to [the correct party] . . . . Mr. Awasthi later explicitly testified that he had misheard the question and misspoke during his answer. . . . In this case, Alpek wishes to proceed to trial on the basis of a single witness's momentary loss of focus for a span of a single question and answer during his deposition. But the summary judgment standard requires a *genuine* dispute about a material fact; no such genuine dispute exists here . . . ."). Mayor Curry, however, did not correct himself—in fact, he reaffirmed his earlier statement when asked. (Curry Dep. 126:7-22). Mayor Curry also did not explain this discrepancy in his reply or any subsequent affidavits. *See Martin v. Merrell Dow Pharms., Inc.*, 851 F.2d 703, 705 (3d Cir. 1988) ("We recognize that there are situations in which sworn testimony can quite properly be corrected by a subsequent affidavit. Where the witness was confused at the earlier deposition or for some other reason misspoke, the subsequent correcting or clarifying affidavit may be sufficient to create a material dispute of fact." (citation omitted)).

10

there is a question of fact, it is improper to decide whether Trulock is entitled to the protections of KRS 15.520 at the summary judgment stage. The Court will assume KRS 15.520 applies for the remainder of its analysis.

### B. Waiver

Defendants contend that Trulock cannot challenge his termination now because he did not appeal Mayor Curry's decision to the Hart Circuit Court within thirty days of the termination decision or within thirty days of learning about the decision, thereby waiving any claim. (Defs.' Mot. Summ. J. 19-20). Trulock argues that he was not required to appeal because he never received notice of the termination decision and, regardless, KRS 15.520 does not preclude his claims based on constitutional violations. (Pl.'s Resp. Defs.' Mot. Summ. J. 4-9).

#### 1. *Procedural Due Process*

"A plaintiff may state a cognizable procedural due process claim under [Section] 1983 one of two ways: 'by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a "random and unauthorized act" *and* that available state remedies would not adequately compensate for the loss.'" *Martin v. City of Glasgow*, 882 F. Supp. 2d 903, 909 (W.D. Ky. 2012) (quoting *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991)). Trulock does not argue that the procedures established by KRS 15.520 violate due process if followed, so he proceeds under the second method. (Pl.'s Resp. Def.'s Mot. Summ. J. 3-4). "[W]hen a random and unauthorized deprivation occurs, the pre-deprivation procedures are simply impracticable and an adequate post-deprivation remedy affords all the process that is due." *Hill v. City of Jackson*, 751 F. App'x 772, 777 (6th Cir. 2018) (internal quotation marks omitted) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 316 (6th Cir. 2006)).

11

"Procedural due process claims that fall into the random-and-unauthorized-act category are subject to dismissal under the *Parratt* doctrine." *Martin*, 882 F. Supp. 2d at 909. Under *Parratt*,[7] plaintiffs are "required to plead and prove that there is no adequate state-law remedy for this deprivation before bringing a [Section] 1983 claim for damages based on a procedural due process violation." *Hill*, 751 F. App'x at 777 (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)); *Sproul v. City of Wooster*, 840 F.2d 1267, 1270 (6th Cir. 1988) ("As a result, plaintiff's [Section] 1983 claim must fail because he did not 'plead and prove' that Ohio does not provide an adequate state remedy. . . . Since we have consistently refused [Section] 1983 relief based on the existence of similar adequate state remedies, the district court did not err by granting summary judgment for the City of Wooster on plaintiff's claims under 42 U.S.C. § 1983."); *Campbell v. Shearer*, 732 F.2d 531, 534 (6th Cir. 1984) ("Plaintiff's remedies under Michigan law are clearly adequate. He is therefore unable to satisfy the 'due process' element of his [Section] 1983 claim, the requirement that he show the existence of a procedural deficiency in state law or a systemic problem with the state's corrective process."); *see also Patsy v. Bd. of Regents of Fla.*, 457 U.S. 496, 516 (1982).

In this instance, Trulock argues that because he did not receive notice of his pretermination hearing, his claims are not waived. To show that Trulock was given notice, Defendants point to the Disciplinary Charges and Notice of Disciplinary Hearing, which then-HCPD Interim Chief David Graves ("Graves") signed, attesting that he personally delivered this document to Trulock. (Defs.' Mot. Summ. J. Ex. G, at 3). Mayor Curry also states that Graves and Officer Chuck Webb told him they had delivered it. (Curry Dep. 61:2-12, 61:22-63:17). In response, Trulock relies on a signed document from Graves, which Trulock characterizes as an affidavit. (Pl.'s Resp. Defs.'

---

[7] "*Parratt* was overruled on another point of law by *Daniels v. Williams*, 474 U.S. 327 (1986), but continues to apply to procedural due process claims." *Hill v. City of Jackson*, 751 F. App'x 772, 777 n.6 (6th Cir. 2018) (citing *Daily Servs., LLC v. Valentino*, 756 F.3d 893, 896 (6th Cir. 2014)).

12

Mot. Summ. J. 5-6 (citing Pl.'s Resp. Defs.' Mot. Summ. J. Ex. A, at 2, DN 69-1)). While the document appears to be signed by Graves and notarized, "[i]t is not sworn, so it is not an affidavit. And it does not include the certification under penalty of perjury, as required by statute, so it is not a declaration, either." *Zavala-Alvarez v. Darbar Mgmt., Inc.*, 617 F. Supp. 3d 870, 886 (N.D. Ill. 2022). "An unsworn statement that lacks a certification under penalty of perjury has no evidentiary value . . . ." *Id.*; *see Zainalian v. Memphis Bd. of Educ.*, 3 F. App'x 429, 431 (6th Cir. 2001). Thus, the Court may not consider the "affidavit" executed by Graves. Even so, Trulock insists that he never received notice of his disciplinary hearing, either via mail or hand delivery. (Trulock Dep. 68:24-69:21, 90:13-91:6; Pl.'s Resp. Def.'s Mot. Summ. J. 4-6). Viewing this evidence in the light most favorable to Trulock, the non-movant, there is a genuine issue as to whether Trulock had notice.

If Defendants failed to provide Trulock with adequate notice of his KRS 15.520 pretermination hearing, they would have "committed an unauthorized act that undermined otherwise robust procedures" ensuring adequate pretermination process to police officers covered by the statute. *See Hill*, 751 F. App'x at 777. In that event, Trulock is required to plead and prove that Kentucky state law remedies are inadequate. *Id.* at 778 (finding that under the Sixth Circuit's precedent interpreting *Parratt*, the plaintiff "was required to plead and prove that there is no adequate state-law remedy for this deprivation" before bringing his claim).

Courts have taken a broad view of the adequacy of state law remedies. *See, e.g.*, *Haag v. Cuyahoga Cnty.*, 619 F. Supp. 262, 274 (N.D. Ohio, 1985) ("What remedy under state law would be considered adequate to remedy a deprivation, however, is a subjective determination."). Certainly, statutorily prescribed administrative and judicial remedies are adequate. *See Copeland v. Machulis*, 57 F.3d 476, 480 (6th Cir. 1995) (acknowledging Michigan law and regulation re

13

process for deprivation of detainees' property as adequate state law remedies). Courts have also found the availability of more general legal remedies in the state courts to be adequate. *See, e.g.*, *Ingraham v. Wright*, 430 U.S. 651, 676-79 (1977) (finding that a Section 1983 action is not available when state civil and criminal proceedings provide adequate post-deprivation remedies for schoolchildren subject to corporal punishment); *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) (finding that suspended teacher had a "panoply of remedies available to her, including . . . a post[-]deprivation action in state court"); *Clair v. N. Ky. Indep. Health Dist.*, 504 F. Supp. 2d 206, 214 (E.D. Ky. 2006) (finding that "state court" was "an adequate avenue for post-deprivation processes").

In this instance, Trulock has neither pled nor proven that state law remedies are inadequate. At most, Trulock argues that KRS 15.520's appeals process, which has a 30-day statute of limitations, is inadequate because he did not receive notice of his termination. The appeals process in KRS 15.520, however, is not the extent of available state remedies. Trulock could have pursued a writ of mandamus, injunctive relief, or a declaratory judgment in state court after he learned of his termination. *See* Ky. R. Civ. P. 61.05, 81; KRS 418.040, 418.045. Indeed, Kentucky courts have mandated post-deprivation process for officers that were improperly terminated under KRS 15.520. For example, the Kentucky Supreme Court upheld a lower court's determination that a police chief "was improperly terminated and that before he could be discharged or demoted, the mayor must comport with the minimum due-process requirements of KRS 15.520, which include a hearing before the city council." *Sheldon*, 977 S.W.2d at 498.

> While it may be absurd to require the mayor to afford due process rights to someone he or she has already decided to fire, the procedures of KRS 15.520 at least give police officers the opportunity to be heard in a public forum and the opportunity to defend and protect their professional and personal reputations from permanent damage.

*Id.* at 499. In *Sheldon*, because there was no hearing or any written findings, the plaintiff police chief's suit was likely brought outside of the appeals process provided by KRS 15.520. Trulock did not address this possibility; there is no indication that Trulock pursued any state law remedies, and no showing has been attempted that those remedies were unavailable. *See* Ky. R. Civ. P. 61.05, 81; KRS 418.040, 418.045. Because Trulock did not address the inadequacy of other state-law remedies, he has waived his due process claims, regardless of whether he had notice of his initial pretermination hearing. Accordingly, Trulock may now use available state law remedies to pursue a hearing under KRS 15.520, if he is entitled to one, but Defendants are entitled to summary judgment on Trulock's procedural due process claims.

### 2. *Wrongful Termination*

Under Kentucky law, the elements of wrongful termination are: (i) a discharge "contrary to a fundamental and well-defined public policy as evidenced by existing law[;]" and (ii) "a constitutional or statutory provision" evidencing that policy. *Foster v. Jennie Stuart Med. Ctr., Inc.*, 435 S.W.3d 629, 635 (Ky. App. 2013) (quoting *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985)). "The decision of whether the public policy asserted meets these criteria is a question of law for the court to decide, not a question of fact." *Id.* (quoting *Grzyb*, 700 S.W.2d at 401). Defendants presume that Trulock's wrongful termination claim is based on a public policy evidenced by KRS 15.520. (Defs.' Mot. Summ. J. 19-20). Trulock does not contradict this impression nor provide any other basis for the public policy necessary for a successful claim of wrongful termination.

The Kentucky Supreme Court has held that, "[i]n the context of a wrongful discharge case, preemption occurs when the statutes that establish the 'well-defined public policy' violation which supports the wrongful discharge pleading are the same statutes that establish a statutory cause of

action for, and structure the remedy for, violations of that public policy." *Hill v. Ky. Lottery Corp.*, 327 S.W.3d 412, 421 (Ky. 2010), *as modified on denial of reh'g* (Dec. 16, 2010). For example, "[a] claim of sex discrimination would not qualify as providing the necessary underpinning for a wrongful discharge suit because the same statute that enunciates the public policy prohibiting employment discrimination because of 'sex' also provides the structure for pursuing a claim for discriminatory acts in contravention of its terms." *Grzyb*, 700 S.W.2d at 401 (citation omitted). Consequently, "[t]he statute not only creates the public policy but preempts the field of its application." *Id.*

In this instance, Trulock did not appeal his termination but now brings a wrongful termination claim based on KRS 15.520. KRS 15.520, however, establishes a thorough procedure for the investigation and adjudication of complaints against police officers, detailing numerous procedural protections and rights. This includes the right to appeal the decision of the hearing authority to the appropriate Kentucky circuit court within 30 days of the date written finding are issued. KRS 15.520(8). Accordingly, under *Hill*, Trulock's wrongful termination claim is precluded. *See Pearce v. Whitenack*, 440 S.W.3d 392, 399 (Ky. App. 2014) (holding that claim for wrongful discharge is precluded because the plaintiff resigned before the KRS 15.520 hearing); *Wilbers v. Off. of Att'y Gen.*, No. 2018-CA-001174-MR, 2019 WL 3375470, at *3 (Ky. App. July 26, 2019) ("Wilbers cannot repackage and rebrand his appeal as an independent cause of action in an attempt to circumvent the time constraints imposed by KRS 15.520 . . . ."). Thus, Defendants are entitled to summary judgment on Trulock's wrongful termination claim.

## V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (DN 55) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITHOUT PREJUDICE**. The Clerk shall strike this matter from the active docket.

**Greg N. Stivers, Judge
United States District Court**

March 9, 2026

cc: counsel of record